Filed 10/6/14  P. v. Munoz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDDIE MUNOZ,<br><br>    Defendant and Appellant. | B252646<br><br>(Los Angeles County<br>Super. Ct. No. BA388688) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Laura F. Priver, Judge.  Affirmed as modified.

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Eddie Munoz was charged by information with two counts of assault by means likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4); counts 2 & 3)[1] and with gang and prior offense allegations (§§ 186.22, subd. (b)(1)(A), 667, subds. (a)(1), (b)-(i), 667.5, subd. (b), 1170.12, subds. (a)-(d)).  The jury found defendant guilty as charged on count 2, guilty of the lesser offense of simple assault on count 3, and found the gang enhancements were true.  The prior offense allegations were found true by the trial court, after defendant waived his right to a jury trial on his priors.  Defendant was sentenced to a total terms of 18 years six months in prison.  He was awarded 1,188 days of presentence custody credit, consisting of 792 actual days and 396 days of conduct credit.

Defendant's only contention on appeal is that substantial evidence does not support his conviction for assault by means likely to cause great bodily injury, reasoning he merely hit and kicked the victim, causing only minor bruises and scrapes.  We disagree; the jury had ample evidence from which to conclude that defendant savagely attacked the victim, and that more significant injuries were avoided only because defendant's assault was interrupted.  We therefore affirm defendant's conviction, but modify the judgment to give defendant one additional day of custody credit.

## FACTUAL BACKGROUND

On July 6, 2011, at 3:30 p.m., Jessica G., and her boyfriend, Jonathan P., were walking near 54th and Main Streets in Los Angeles.  Jessica G. saw defendant in a shopping plaza about 30 feet away.  She recognized him because he had bullied her nine years before.  She had known him as "Dreamer."  Defendant claimed his gang by yelling at them, "55 Bunch," to let Jonathan P. and Jessica G. know they were in 55 Bunch territory.  Jessica G. told defendant, "F--- you."  Defendant walked toward them until he was about five feet away, and took off his shirt to show his 5B5 or 55B tattoo.

Because defendant disrespected Jonathan P. and Jessica G., Jonathan P. said, "F--- French Fries" and Jessica G. said, "F--- 55."  ("French Fries" is a derogatory term for

---

[1]     There is no count 1 in the information.

defendant's gang.) Defendant responded, "all right" and gestured for others to come over. Jonathan P. and Jessica G. tried to walk away, when a man Jessica G. knew as "Spooky" got off his bike. Defendant told Spooky about Jonathan P. disrespecting their gang, and Spooky said, "187 on you and your boyfriend."

The attack started with defendant and Spooky punching Jessica G. and Jonathan P. "hard" with closed fists. Jessica G. and Jonathan P. were up against a fence. Jessica G. stepped in between Jonathan P. and their attackers, because she thought they would not hit a girl, but they hit her on her upper body. Jonathan P. fell to the ground, and the men focused their attack on him. A third man came and started kicking and punching Jonathan P. The men continued kicking and punching Jonathan P. on his head, torso, arms, and legs. Jonathan P. tried to defend himself by hitting back, but he was unable to stop his attackers.

Jessica G. threatened to "call the police" and pulled out her mobile phone. Defendant said, "She called the police. She burned the spot," so the three assailants ran off.

Jonathan P.'s face and arms were bruised; he also suffered scrapes to his arm.

Gang expert Rene Santos testified that gangs promote respect of their gang by intimidating and assaulting others. Defendant was a self-identified member of the 55 Bunch gang. Based on a hypothetical tracking the facts of the case, Officer Santos opined the assault was for the benefit of the gang.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends insufficient evidence supports his conviction of assault by means likely to cause great bodily injury, reasoning Jonathan P. suffered only minor injuries. Respondent contends sufficient evidence supports the verdict but points out that defendant is owed one additional day of custody credit to account for leap year in 2012. We agree that defendant is owed an additional day, but otherwise affirm defendant's conviction, concluding that substantial evidence supports the jury's findings.

3

1. **Sufficiency of the Evidence**

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  All conflicts in the evidence and questions of credibility are resolved in favor of the verdict, indulging every reasonable inference the jury could draw from the evidence.  (*People v. Autry* (1995) 37 Cal.App.4th 351, 358.)  Reversal is warranted only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]"  (*Bolin*, *supra*, at p. 331.)

Penal Code section 245, subdivision (a)(4) prohibits "an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury."  (*People v. Muir* (1966) 244 Cal.App.2d 598, 604 (*Muir*); see also *People v. Chambers* (1964) 231 Cal.App.2d 23, 27 (*Chambers*) [the offense requires that great bodily injury will likely result from the force applied, not that an injury actually occurred].)  Actual bodily injury is not an element of the offense (*People v. Richardson* (1972) 23 Cal.App.3d 403, 410), and the injuries suffered need not be serious (*People v. Dewson* (1957) 150 Cal.App.2d 119, 132).  While the extent of the injuries suffered is probative of the amount of force used, it is not conclusive.  (*Muir*, *supra*, at p. 604.)  The amount of force likely to produce great bodily injury is a question of fact for the jury.  (*Dewson*, *supra*, at p. 132.)

Jonathan P. and Jessica G. testified that three men repeatedly hit and kicked Jonathan P., on his head, torso, arms, and legs, while he was lying prone on the ground.  Jonathan P. said the hits were "hard," and they caused scrapes and bruises.  It is well settled that punches and kicks can constitute force likely to cause great bodily injury.  (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Dozie* (1964) 224 Cal.App.2d 474, 475.)  And, it is irrelevant whether Jonathan P. actually suffered great bodily injury.  (*Chambers*, *supra*, 231 Cal.App.2d at p. 27.)  On this record, the jury

4

could reasonably conclude that defendant attacked Jonathan P. with force "*likely* to produce great bodily injury . . . ." (*Muir*, *supra*, 244 Cal.App.2d at p. 604.)[2]

## 2. Custody Credit

Respondent points out that defendant is owed an additional day of custody credit, to account for leap year in 2012.[3] Defendant was awarded a total of 1,188 days of custody credit, consisting of 792 actual days and 396 days of conduct credit. Because his crimes were committed before October 1, 2011, defendant's credits were calculated under the old formula, giving him two days of conduct credit for every four days of actual time spent in custody under former section 4019, subdivisions (b) and (c). (See Stats. 1982, ch. 1234, § 7; Stats. 2009-2010, 3d Ex. Sess. 2009-2010, ch. 28, § 50; Stats. 2010, ch. 426, § 2; see also former § 2933, subd. (d), Stats. 1996, ch. 868, § 1.5; Stats. 2009-2010, 3d Ex. Sess. 2009-2010, ch. 28, § 38; Stats. 2010, ch. 426, § 1.) Defendant was in custody from August 25, 2011, until he was sentenced on October 25, 2013. Including February 29, 2012, defendant was in custody for a total of 793 days, rather than the 792 awarded by the trial court. However, this does not affect the number of conduct credits to which defendant is entitled. (See *People v. Verba* (2012) 210 Cal.App.4th 991, 993.)

DISPOSITION

The judgment is affirmed as modified to reflect a total of 1,189 days custody credit, and 793 days of actual local time credit. The superior court is directed to prepare an amended abstract of judgment, and shall forward a certified copy of the same to the Department of Corrections.

GRIMES, J.

We concur:

BIGELOW, P. J.          RUBIN, J.

---

[2]     It is clear that the jury understood the distinction between aggravated and simple assault, as it found defendant guilty of the lesser offense of simple assault as to Jessica G.

[3]     On our own motion, we take judicial notice of this fact. (Evid. Code, § 452.)